————o————

GEORGE KANE, Respondent, *vs.* CAROLINE F. McCOWN, Appellant.

1. *Attachments—Publication—Order of, when may be issued by clerk in vacation.*—Under the statute of January 14th 1860, touching attachments, the clerk of the Circuit Court has power to make orders of publication in all cases where the court should in term have made them; and this power is not limited to the vacation which precedes the first session after filing the petition.

2. *Attachment—Order of publication—Omission to designate newspaper—When not fatal.*—Under the practice act of 1855 (R. C., 1855, p. 1225, § 17) the omission of the clerk to designate in the order of publication the particular newspaper in which notice of suit shall be published, although an error, was not such an one as to destroy the judgment rendered thereon in a collateral proceeding.

3. *Executions—Sales under, after return day—Const. Stat.*—Under the act of March 23rd, 1863 (Sess. Acts 1863, p. 20), a sale under an execution theretofore levied may be made after the return day thereof.

4. *Execution—Handed over by sheriff to his successor—Sale may be completed by latter.*—The intention of the execution law of 1855, and that of 1865 (§§ 59,

Kane v. McCown.

63), was to require executions not completely executed to be handed over to, and completed by, the sheriff in office at the time of the sales.

5. *Conveyances—Corrections in open court—Acknowledgment of.*—Where a deed is corrected in open court, there would seem to be no necessity for a formal acknowledgment of the deed there corrected.

6. *Judicial sales held at church—Effect of.*—Where in consequence of the fact that a Circuit Court House was occupied by United States troops, a neighboring church at the same county seat was used as a court house, a judicial sale at the latter place would not be thereby rendered void. The obvious meaning of the execution law is to require judicial sales to be made at the door of the building occupied and used as a court house.

7. *Deed by sheriff to purchaser—Delivery not necessary, when.*—Where the deed to a purchaser at sheriff's sale is executed, acknowledged and recorded, and his title is decreed by the court to another, and the purchaser transfers to the other his rights under the purchase, no formal delivery by the sheriff to the purchaser is necessary; the law in such cases will presume a delivery.

8. *Supreme Court—Decisions of—What points should be reviewed.*—Although the decision of a single point in a case may determine the affirmance or reversal of the judgment in that case, it does not follow that the court may not proceed to examine and decide other points which the record presents.

9. *Attachment—Jurisdiction. of court over property—Order of publication cannot be attacked collaterally.*—Where a writ of attachment is valid, conforming essentially and substantially to the requirements of the statute, and issued by the clerk in conformity with the power vested in him, the court obtains jurisdiction over the property, and although the order of publication be defective, the judgment of the court and sale of the property will not be thereby invalidated in a collateral proceeding.

10. *Attachment—Finding of court cannot be attacked collaterally.*—Where the record shows a finding of court, that there has been a legal order of publication and a publication in pursuance thereof, such finding cannot be attacked in a collateral proceeding by showing that there was no publication.

*Appeal from Johnson Circuit Court.*

*Hicks & Nickerson,* for Appellant.

I. The Circuit Court had no jurisdiction to hold courts at said meeting house, and its judgments, orders and decrees made thereat, without the appearance of parties and consent for trial or hearing, were void. (People vs. Northup, 37 N. Y., 205 ; People vs. Sanchez, 24 Cal., 20 ; Ross vs. Austin, 2 Cal., 183 ; People vs. Bradwell, 2 Cowen 447.) And it had no power to transfer the place. fixed by law for the sale of real estate under execution to any other place.

II. The authority of clerk to make an order of publication was limited to the vacation next preceding the return term of the writ, as the court, at the return term of the writ, had full control and jurisdiction over the subject matter. The word "vacation," as used in this section, means the time intervening between the time of issuing the writ and the return day thereof. On the return day of the writ, the jurisdiction of the court commenced, and that of the clerk ceased. The act of January 14th, 1860, supplementary to an act to provide for suits by attachments of December 8, 1855, does not enlarge or restrain the jurisdiction of the court in making orders of publication. Both these acts must be taken and construed together.

III. If Christian executed the writ of execution by levying the same on the real estate in controversy, then it was his duty to have made the sale under the levy so made, notwithstanding his term of office may have expired before a term of the court was held at which a sale could have been made, and there was no warrant in the law for him to turn said execution over to his successor in office. See 62nd section of the execution law of 1855, page 749. But the cases of Dunnica vs. Coy, 28 Mo., 527 ; Carr vs. Youse, 39 Mo., 350 ; Larkey vs. Lubke, 36 Mo., 121 ; Merchants' Bank of St. Louis vs. Harrison, 442 ; show conclusively, that Christian made no such legal levy upon the land ; that the writs remained in his hands unexecuted at the return term thereof, in October, 1864 ; that there was no levy made in the life-time of the executions ; that they were *functi officio* when delivered to Williams on the 9th day of February, 1865. (Bank of Missouri vs. Bray, 37 Mo., 195.)

IV. The decree does not find that the sheriff's deed was delivered to Calhoun. Without delivery no title passed. (Barr vs. Schroeder, 32 Cal., 616.)

V. After the amendments and interlineations were made in the deed, it was not again acknowledged by the sheriff in open court. The requirements of the statute in this respect are imperative, and it has always been

considered, that an acknowledgment of a sheriff's deed in open court, and a certificate of the same, are essential to the validity of the conveyance. (Ryan vs. Carr, 46 Mo., 485; Allen vs. King, 35 Mo., 225; Thornton vs. Miskimmon 48 Mo., 222.)

*Botsford & Johnson*, for Respondent.

I. A call, made at the door of the building in which the Circuit Court is being held, is at the proper place for an execution sale. (1 Wagn. Stat., 609, § 42,) It would not be valid if made at any other place. (Merr vs. Bell, 45 Mo., 333.) The building, in which the Circuit Court is held, is in contemplation of law the court house.

II. The mis-recital and omission in the deed to Kane were clerical errors and immaterial, as the other recitals sufficiently identified the judgment. (1 Wagn. Stat., 612, § 54; Tanner vs. Stine, 18 Mo., 580; Steward vs. Severance, 43 Mo., 322; Buchanan vs. Tracy, 45 Mo., 437; Bank of Whitehall vs. Pettis, 13 Vt., 395; Armstrong vs. McCoy, 8 Ohio, 128; Perkins vs. Dibble, 10 Ohio, 433; Jackson vs. Young, 5 Cowen, 269.) But these errors are corrected by the sheriff by leave of the court. (Thornton vs. Miskimmon, 48 Mo., 219.)

III. The clerk had the power to issue the orders of publication after the return term in the same manner as before. (2 Wagn. Stat., 1008, § 13; Schell vs. Leland, 45 Mo., 289; Harris vs. Grodner, 42 Mo., 159; Moore vs. Stanley, 51 Mo., 317; Freeman vs. Robbins, 45 Mo., 315; 1 R. C., 1855, p. 245, § 23; Sess. Acts 1859–60, p. 4.)

And the finding of the court, that publication had been made according to law, cannot be disputed in a collateral proceeding. (Freeman vs. Thompson, 53 Mo., 183; Hardin vs. Lee 51 Mo., 241; Cooper vs. Reynolds, 10 Wall., 308; Voorhies vs. Bank U. S., 10 Pet., 449; Granger vs. Clark, 22 Maine, 128; Cook vs. Darling, 18 Pick., 393; Goudy vs. Hall, 30 Ill., 109; Thomson vs. Tolmie, 2 Pet., 169; Dingledine vs. Hershman, 53 Ill., 288; Elliot vs. Piersol, 1 Pet., 340; Peersley vs. Hays, 22 Iowa, 128.) But irregularity in, or even

want of, an order of publication will not render the sale void. (Hardin vs. Lee, 51 Mo., 241; Freeman vs. Thompson, 53 Mo., 183; Cooper vs. Reynolds, 10 Wall., 308; Satcher vs. Satcher's Adm'r, 41 Ala., 26; Williamson vs. Leland, 2 Pet., 657; Grignon's Lessee vs. Astor, 2 How., 319; Beauregard vs. New Orleans, 18 How., 497; Paine vs. Moreland, 15 Ohio, 442; Robb vs. Irwin, 15 Ohio, 698; Shelton vs. Newton, 3 Ohio St., 494; Benson vs. Cilly, 8 Ohio, 614; Rover Judicial Sales, § 75; Covington vs. Ingram, 64 N. C., 123; Alexander vs. Nelson, 42 Ala., 462; Dequindre vs. Williams, 31 Ind., 444; Woods vs. Lee, 21 La. An. 505; Southern Bank vs. Humphires, 47 Ill., 227; Parker vs. Kane, 22 How., 14.)

IV. It was competent for the sheriff to execute the unreturned executions under which levies had been made by his predecessor in office, without making any further levy; and no *venditioni exponas* was necessary to enable him to do so. (Wood vs. Messerly, 46 Mo., 255; Boyd vs. Jones, 49 Mo., 202; Stewart vs. Severance, 43 Mo., 322; McDonald vs. Gronefeld, 45 Mo., 28; Duncan vs. Matney, 29 Mo., 368; Porter vs. Mariner, 50 Mo., 364.)

V. It is admitted that a sale under an execution, after the same is satisfied, is void. (Durette vs. Briggs, 47 Mo., 356.) But the return of the sheriff is no evidence that the land was sold in the order in which the sales are recited, either in the deeds or the return. (Jackson vs. Robert, 11 Wend., 422.) And it was the duty of the sheriff to apply the first bid upon the oldest execution. (Russell vs. Gibbs, 5 Con., 390; Rowe vs. Richardson, 5 Barb., 385; Camp vs. Chamberlain, 5 Den., 198; Barker vs. Gates, 1 How. Pr., 77.) A sale on several executions is not evaded by a defect in the judgments on which a part of them were issued. (Brace vs. Westervelt, E. D. Smith, 440; Herrick vs. Graves, 16 Wis., 157.) By the sheriff's sale and the execution and acknowledgment of a deed to Calhoun, and the delivery thereof to the recorder for record, the legal title passed to Calhoun; and the court in decreeing this title in Kane necessarily adjudicated upon the question of the delivery of the deed, and this adjudica-

tion is binding upon the defendants. (Bigelow on Estoppel, 75 and 286 ; Gorham vs. Brennon, 2 Den., 147 ; Logan vs. Moore, 1 Dana, 57 ; Adams vs. Barnes, 17 Mass., 365 ; Cooper's Lessee vs. Galbraith, 3 Wash. C. C., 550 ; Massey vs. Thompson, 2 N. & McCord, 105 ; McKnight vs. Gordon, 13 Rich. Eq., 222.)

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment. The defendants are the widow and heirs of James McCown. The suit was originally against McCown, but, on his death, proceeded against his widow and children. It was revived against the widow, as administratrix, and against the minor children, who filed answers by their guardian *ad litem.*

The defendant, Caroline McCown, set up her dower rights, and her right to remain in the mansion house of her husband until dower was assigned. There was a replication to the answer, denying that McCown died seized of the premises, and also averring, that his mansion house and the messuage and plantation adjoining embraced only a portion of the land sued for.

The title of the plaintiff is based upon two deeds made by the sheriff under sales made under six special judgments in attachment and executions thereon. One of the deeds is directly to plaintiff; the other is to one Calhoun, and is accompanied with a decree of the Circuit Court of Johnson county, vesting the title of Calhoun in plaintiff. The deed to the plaintiff recited a judgment in a suit by attachment in favor of H. C. Grove, rendered April 21, 1864, upon which a special execution was ordered and was issued Sept. 4, 1865 ; and a judgment in a suit by attachment in favor of Sarah Colburn, rendered April 21, 1864, upon which a special execution was ordered and issued Sept. 4, 1865 ; and a judgment in attachment in favor of one Marr, rendered April 21, 1864, and an execution ordered and issued as in the other cases ; and a judgment in favor of Calhoun of the same date and the execution dated as above.

These four executions, it is recited in the deed, were delivered to the sheriff on the 12th of Sept. 1865, and that, after advertising the land levied on, said lands were sold to plaintiff on Oct. 17, 1865, and that the sale took place before the court house door and while the Circuit Court was in session.

Objections were made to this deed on the ground, that the sale took place at the door of a church or meeting house in the town of Warrensburg where the Circuit Court was held, such building being then used as a court house, and the fact that the sale did so take place was proved.

It seems that the court house was occupied by Federal troops, and was otherwise unfitted for holding court, and the court was held in a building distant some hundred yards or more from the court house.

The second deed offered by plaintiff was to Calhoun. It recited a judgment in an attachment suit in favor of one St. John, rendered April 21, 1864, upon which an execution issued Sept. 15, 1864, and made returnable at the Oct. term, and, no Oct. term being held, the execution was delivered to the sheriff on Feb. 9, 1865; and a judgment in an attachment suit in favor of Colburn, rendered April 21, 1864, on which a special execution issued Sept. 16, 1864, made returnable to the Oct. term 1864, and, that this term not being held, this execution was delivered to the sheriff Feb. 9, 1865; and a judgment in a proceeding by attachment in favor of Sarah Colburn rendered April 21, 1864, on which a special execution was issued Sept. 16, 1864, returnable to the Oct. term, 1864, and as no such term was held, the writ was delivered to the sheriff Feb. 9, 1865; and a judgment in attachment in favor of John Marr, rendered April 21, 1864, upon which a special execution issued Feb. 8, 1865, returnable to the April term 1865; and a judgment in favor of William Calhoun, rendered April 21, 1864, upon which a special execution issued Feb. 8, 1865, returnable April term, 1865. This deed further recites the levy, advertisement and sale, and purchase by plaintiff.

The principal objections to this second deed are, that the

executions on the judgments in favor of St. John and Colburn
were issued in Sept. 1864 and were returnable to the Oct.
term, and not having been executed were handed over to the
successor of the sheriff to whom they were directed, and exe-
cuted by said successor. The first officer had levied on land
under the writs. It is claimed that these executions were
dead in Feb. 1865. It is further objected to this deed that
the deed had never been delivered to Calhoun. To sustain
this objection, Calhoun was examined, and stated that he knew
nothing of the deed. To obviate this objection, the plaintiff
read the record of a proceeding in the Common Pleas Court
of Johnson county, in which the present plaintiff, Kane, was
plaintiff and William Calhoun defendant, which resulted in a
decree to transfer Calhoun's title to the said plaintiff.

The orders of publication in this case were made by the
clerk in vacation and are as follows:

"H. C. Grove, plaintiff,
          vs.
James McCown, deft.

In the Circuit Court of Johnson County. In vacation Jan.
23, 1864.

Now on this 28th day of July, 1862, comes the said plain-
tiff in the above entitled cause before the undersigned, clerk
of the Circuit Court for the county of Johnson, in the State
of Missouri, in vacation, and filed his petition and affidavit,
stating among other things, that said defendant, James Mc-
Cown, had absented himself from his usual place of abode in
this State, so that the ordinary process of law could not be
served on him, and that said defendant, W. H. Hart, is not a
resident of this State.

It is, therefore, ordered by the said clerk in vacation, that
publication be made, notifying said defendants that an action
has been commenced against them, by petition and attach-
ment, in the Circuit Court of said County of Johnson, founded
on a promissory note for the sum of seventy-five dollars, dated
on the 10th day of Nov., 1860, and due sixty days after date,
and made and delivered by said defendant to said plaintiff,

and that the property of said McCown has been attached, and unless he be and appear at the next term of said court to be held at the court house in the town of Warrensburg on the 10th day of April 1864, and on or before the 3d day of the term, if the term shall so long continue, if not, then before the end of the term, and plead to said petition, judgment will be rendered against him and his property sold to satisfy the same.

It is further ordered that a copy hereof be published in some newspaper printed in this State, for four weeks successively, the last insertion to be at least four weeks before the commencement of the next term of this court.

S. P. WILLIAMS, Clerk.''

The court, at the instance of plaintiff, declared the law to be as stated in the three following instructions:

1. If the court, sitting as a jury, finds from the evidence, that on the 21st day of April, 1864, certain special judgments were rendered in the Circuit Court of Johnson county, one of which judgments was in favor of H. C. Grove and against James McCown, one in favor of Sarah Colburn and against James McCown, one in favor of John Marr and against James McCown, and one in favor of William Calhoun and against said James McCown; and that the same were duly returned unsatisfied, either in whole or in part, and that afterward *alias* special executions were issued upon the judgments aforesaid on the 4th day of Sept., 1865, and the same were duly delivered to the sheriff of Johnson county; and that in pursuance of the commands of said executions, the sheriff of Johnson county, after giving twenty days' notice of the time and place at which said real estate would be sold, afterwards on the 17th day of Oct., 1865, exposed the same to sale at public auction at the door of the building in which the Circuit Court of said county was then in session, and which building was then used and occupied as a court house in said county, and that at said sale the plaintiff, George Kane, became the purchaser of the land, to wit: (here the land is described,) and that he has received a sheriff's deed to said land

duly executed and as read in evidence, then said sale and the deed so executed was sufficient to vest the legal title to said land in said Kane, and judgment for the possession of the real estate aforesaid should be found for the plaintiff.

2. If the court finds the executions recited in the sheriff's deed to William Calhoun, read in evidence on the part of the plaintiff, were issued as follows, to wit: The one in favor of W. H. and G. W. Colburn, on Sept. 16, 1864; the one in favor of Arthur St. John, Sept. 15, 1864; and the one in favor of Sarah Colburn, in September, 1864; that the same were all made returnable to the Oct. term of said court, 1864, and that the same were delivered to A. M. Christian, then sheriff of said county, and that he on the——day of Sept., 1864, levied the same on the real estate described in said deed, by indorsing his said levy on the back thereof, and that for any cause said lands were not sold at the said Oct. term of said court; and that afterwards, on the 9th day of Feb., 1865, said A. M. Christian delivered said executions to T. W. Williams, his successor in office, then said executions were sufficient authority for him to sell said land, at the time and in the manner stated in said deed, to said Calhoun.

3. If the court finds from the record in the case, that this suit was brought against James McCown in his life-time, and that the said James McCown appeared and filed his answer herein; and that he, the said James McCown, afterwards departed this life, leaving Caroline F. McCown his widow, and and the other defendants herein his heirs at law, and that this suit was afterwards revived against the said Caroline F. Mc-Cown, as the administratrix of the said James McCown, and against the said other defendants as his heirs at law, then plaintiff is entitled to the like judgment for the possession of the premises as he would have been if the original defendant, James McCown, had not departed this life during the pendency of this action.

Defendants asked the court to make the following declarations of law, of which the 2nd and 5th were given:

1. If the court finds from the evidence, that the petitions

and affidavits, upon which the said several judgments, recited in the said sheriff's deeds, were rendered, were filed in the office of the clerk of the Circuit Court of said county in vacation, to-wit: In the case of W. H. and G. W. Colburn, June 14, 1862; in the case of St. John, June 20, 1862; in the case of Grove, June 28, 1862; in the case of Sarah Colburn, June 27, 1862; in the case of Calhoun, July 14, 1862; in the case of John Marr, July 14, 1862; and further find, that a term of said court was held in October, 1862, at which time said papers were returned into said court; and that the only notices or orders of publication, ever made or given in said cases to defendant McCown, were made and issued by the clerk of said court in vacation, to wit: In the case of Colburn, on January 22, 1864; in the case of St. John, on the same day; in case of said Grove, January 23, 1864; in case of Sarah Colburn, January 26, 1864; in case of said Calhoun, Jan. 23, 1864; and in case of Marr, Jan. 29, 1864; after said term of said court, in October 1862, then the clerk of said court had no authority to issue such orders of publication, and defendant was not legally notified of the pendency of said actions, or either of them; and the said several judgments afterwards rendered in said cases against said McCown, upon the proof of the publication of such notices, were and are null and void, and all subsequent proceedings are and were null and void; and the court should find the issues for the defendants.

2. If the court finds, that said executions, recited in the said sheriff's deed to Calhoun read in evidence, to-wit: That in favor of the Colburns was issued on the 16th of September, 1864; that in favor of St. John, September 15, 1864; that in favor of Sarah Colburn, Sept. 16, 1864; and were all made returnable to the October term, 1864; that the same came into the hands of Sheriff T. W. Williams on the 9th day of February, 1865, unexecuted by A. M. Christian, the former sheriff of said county, then said executions, and each of them, conferred no authority on Sheriff Williams to sell said land; and if the court so finds, then the executions in favor of said Colburn and Marr were the only ones that conferred any

authority on the sheriff to sell the said land. And if the court finds, that said sheriff sold said lands in the order of time in his said amended return specified, and that the sale of said southeast quarter of section 20, township 46, range 26, sold to said Union Bank for the sum of $680, the same was sufficient to satisfy and pay off said executions in favor of said Calhoun and Marr; and said sum so bid by the Union Bank, and paid to said sheriff, was sufficient to pay said executions in favor of said Calhoun and Marr, as well as the judgments upon which they were issued; and all sales, made by said sheriff after said executions were so satisfied, were and are null and void; and the sheriff's deed to Calhoun, for lands so sold after said executions were so satisfied, conferred no title on said Calhoun.

3. If the court finds from the evidence, that the lands in controversy were sold by the sheriff of said county under executions, and that the said sales were made by the sheriff at the door of the church, some eighty yards or more distant from the court house, and that plaintiff claims title under such sales, then such sales were null and void, and the deeds made in pursuance thereof conveyed no title whatever.

4. If the court finds from the evidence and pleadings in this cause, that said James McCown died possessed of the lands in controversy, and that the different tracts thereof were all contiguous to each other, and constituted the farm or plantation on which was situated the mansion house in which the said McCown resided some time before and at the time of his death, and in which Caroline F. McCown, one of the defendants, resided with him at the time of his death, as his wife, and where she since, and now, resides as his widow, and that her dower therein has never been assigned to her as the widow of said McCown, then the defendant, Caroline, is entitled to the possession of the lands in controversy as against the claim of the said plaintiff, Kane; and the court must find the issues for the defendant.

5. The court in this case declares the law to be, that according to the present condition of the pleadings it stands admit-

ted herein, that the defendant, Caroline F. McCown, is the widow of said James McCown, and that he departed this life about the 6th day of July, 1867; that at the time of his death the said McCown, and his family, including the defendant, Caroline F· McCown, were, and for a long time had been, residing in the mansion house situate on the land in controversy; that the said defendant, Caroline, at the time of her said husband's death, resided with him at said mansion house; that the said Caroline, at the time. of the death of the said said James McCown, became, ever since has been, and now is, entitled to dower in the lands in controversy, and that dower never has been assigned or admeasured to her therein, or in any part thereof.

6. The court declares the law to be, that if it finds from the evidence that the sheriff's deed, executed by Thos. W. Williams, sheriff of Johnson county, to the plaintiff, George Kane, purporting to convey part of the land in controversy, was by the said sheriff acknowledged in open court on the 20th day of April, 1866, and was thereafter delivered by said sheriff to said Kane, and was by him received on the 3rd day of October, 1866, and was by him duly filed for record in the office of the recorder for Johnson county, and therein recorded; that afterwards said Thos. W. Williams, on the 17th day of October, 1871, at the instance and special request of said plaintiff, Kane, interpolated said deed by inserting over the ninth line of the third page of said deed, over and between the word "court" and the words "for the year 1864," so as to interpolate the year in which a judgment therein recited was rendered, which judgment was one under which said plaintiff claims title, and that said Thos. W. Williams, on the 17th day of October, 1871, at the instance and request of said plaintiff, Kane, interpolated said deed, by writing over the 21st line of the 6th page of said deed, over and between the word "court" and the words "for the year 1864," so as to interpolate the year in which a judgment recited in said deed was rendered in favor of William Calhoun, and under which judgment the plaintiff claims title; and that after said deed was so interpo-

lated, the same was not thereafter acknowledged, then said interpolations were illegally made, and are a nullity, and the said deed is a nullity, and cannot convey any title to the lands in controversy, or any part thereof, to the said plaintiff.

7. The court declares the law to be, that if it finds from the evidence, that the sheriff's deed, purporting to have been made by Thos. W. Williams to William Calhoun, and under which the plaintiff claims title to a part of the land in controversy, was never ordered to be drawn or executed by the said Calhoun; that it was never delivered to said Calhoun; that it was never placed on record by the said Calhoun; then the said deed cannot convey any title whatever to the lands in controversy, or any part thereof, to the said plaintiff, Kane.

The discussion in this case has embraced a variety of points, but they mainly depend on the following inquiries: First, whether the clerk had any power to order the publication which he did in January, 1864; Second, whether the failure to designate the newspaper in the order rendered it void; Third, whether the executions recited in the deed to Calhoun had expired before the sale, and if not, whether Williams, the successor of the sheriff to whom they were directed, had any power to make the sale; Fourth; if the sale at the door of the church, where the Circuit Court was being held at the time, was valid; Fifth, whether the decree, in the case of Kane vs. Calhoun, transferred Calhoun's title to plaintiff.

There were other points made and discussed, but they are minor and subordinate ones.

It will be seen that the order of publication in this case was made in January, 1864, upon a petition and affidavit, filed in 1862, and it is insisted, that, under the 23rd section of the attachment law of 1855, the power of the clerk to make an order in vacation ceased at the first session of the court after the issuance of the writ. This 23rd section provides, that, if the plaintiff, or some one for him, files with his petition an additional affidavit, stating that all or a part of the defendants are non-residents or have abandoned, etc., the clerk, in vacation, shall order a publication. It further provides, that when

the defendant is not summoned, and the return of the sheriff shows that he cannot be, the court must order a publication. This section is very obscure and couched in terms scarcely intelligible; but the above is substantially its meaning, and it is insisted, that, after the term of the court which succeeds the filing of the petition, the authority of the clerk ceases.

It might be a question whether it did or not under this 23rd section of the act of 1855, but in 1860 the Legislature provided as follows : "If an attachment be obtained on either of the grounds specified in the first, third or fourth sub-divisions of section one of the act to provide for suits by attachment, approved December 8, 1855, or if, after an attach. ment issued, an additional affidavit be filed alleging any fact embraced in these sub-divisions, the clerk shall order a publication to be made as required in section 23 of article 1 of said act, and he may, in like manner, order publication in any case, in which, by said section, it is required to be ordered by the court."

Now this provision presents the anomaly of requiring a clerk to discharge the duties neglected by the court, and the clerk is to determine whether the court ought to have issued an order of publication or not. But the legislature clearly invests the clerk with the power to make orders of publication in all cases where the court should, in term, have made them, and this power is not limited to the vacation which precedes the first session after the filing of the petition. Whether the clerk in this case decided rightly or otherwise, is of no importance, since he was invested with the power to decide, and did issue the order of publication.

A further objection to this order of publication is, that the order does not designate the newspaper in which it was to be printed. The practice act of 1855 (Rev. Code of 1855, p. 1225), directed that "every order against non-resident, absent or unknown defendants shall be published in some newspaper published in this State, which the court, judge or clerk, making the order, may designate as most likely to give notice to the person to be notified."

It is very clear that a designation by the court, clerk, or judge is required. But it is not clear that the designation must appear in the order of publication. If the court, or judge, or clerk should select a newspaper manifestly designed to avoid giving notice to the party interested, or clearly proved to have been made with such a design, the order of publication would have no efficacy. In this case there was no proof as to the paper selected by the clerk, and although the order is objected to as not in itself specifying the newspaper, it is not attempted to be shown, that the newspaper actually selected was not published within the State, or that it was not likely and most likely to give notice to the parties interested. In a collateral proceeding to nullify the judgment, and execution on it, presumptions are all in favor of the validity of the judgments and sales. The omission of the clerk to designate the particular newspaper was undoubtedly an error, which may or may not have been fatal to the case in direct proceedings to review it, but cannot destroy the judgment in a collateral proceeding.

It is contended, that the execution, under which these sales were made, had expired before they were executed. All the judgments were rendered in April, 1864, and the executions on them were returnable to the October term, 1864. No October term was held, the executions were levied, and as no sales could have been made in October, 1864, new executions, or writs *venditioni exponas* were issued in February, 1865, returnable to the April term, 1865, or the writs were handed over to the sheriff elected and acting in 1865, to be completed after levy.

These objections have already been considered and decided in the cases of Stewart vs. Severance, 43 Mo., 322, and Buchanan vs. Tracy, 45 Mo., 437. The act of March 23, 1863, is considered as authorizing such sales after the return day of the writs.

The proper construction of the various sections of our execution law, which are substantially the same in the Revised Code of 1855, and that of 1865, from section 59 to section

63 is not entirely clear; but upon the whole we think the intention of the law was to require executions not completely executed to be handed over to and completed by the sheriff in office at the time of the sales. The 59th section does not prohibit this in the case of levies by a previous sheriff, although the 60th section undoubtedly authorizes the sheriff, who levies the writ, to go on and complete the various acts required under the original process. He is not required to do so, and the practice has been otherwise. This section is merely designed to give validity to, or rather to recognize the validity of, a title acquired in this way. The power of the officer, who makes the levy, to proceed with the advertisement, sale and deed is recognized. But the 59th section does not say that, if the original officer, who levies the writ, hands it over to his successor, who proceeds to make advertisement and sale, and deed, such sale and deed are void.

Admitting that this section does not require the sheriff who makes the levy to hand over the writ to his successor, simply because his term of office has expired, and that the words "not executed" have no application to a case where there has been a levy, still it does not prohibit the officer from so handing over to his successor writs which have been only partially executed; and in either event the sale is valid and the deed valid. The successor may adopt the levy of his predecessor and proceed with the advertisement, sale and deed; and so if the original sheriff who makes the levy, instead of handing over to his successor the writ, chooses to proceed under the 62nd section and make advertisement, sale and execute a deed, it is also valid. And this seems to be the opinion of this court in Duncan vs. Matney, 29 Mo., 368; and Mechanics' Bank vs. Harrison, 39 Mo., 433.

The clerical error, made in the deeds in which the judgment in favor of Colburn was recited, as rendered April 21st, 1865, was corrected.

It was manifestly a mere clerical error, since the sales were made before the date of this recited judgment, and all the other judgments were recited as occurring on April 21st, 1864.

This correction was made by allowing the sheriff to amend his return, and by then correcting the error in dates in open court. It is insisted, however, that the corrected deed was never acknowledged, but as the correction was made in open court, there would seem to be no necessity for a formal acknowledgment of the deed thus corrected. It had already been once acknowledged and the record of the acknowledgment made.

But it is urged, that all these sales, having been made at the door of a church or meeting house, in which the Circuit Court at the time held its sessions, in the town of Warrensburg, were therefore void. The evidence clearly established the fact that the sales were at the door of a building not usually used as a court house, but which at the time was so used, because the building regularly appropriated to these purposes was occupied by troops of soldiers, and was otherwise not in a condition to be used as a court house. It is plain that a sale at the door of the deserted court house, where no court was in session, would have been utterly against the spirit and meaning of the law. Whether the County Court had failed to provide a suitable building for holding court, or whether the Circuit Court had selected the building for its session, is not material. It could not be maintained, that the proceedings of the Circuit Court would be invalid, although its sittings were not in a building designated by the County Court. Both buildings were at the county seat of the county. And the obvious meaning of the execution law is to require sales at the door of the building occupied and used as a court house.

Another objection to the plaintiff's title, is that the sheriff's deed to Calhoun was not delivered. Calhoun had transferred his rights under his purchase to the plaintiff, and, in a proceeding on the part of the plaintiff against Calhoun, the court had decreed a transfer of Calhoun's title to plaintiff. The deed to Calhoun was executed, acknowledged and recorded, and this was equivalent to a delivery. No formal delivery was necessary, as the law presumes a delivery under such circumstances.

The decree transferred Calhoun's title to plaintiff, although this decree was rendered between parties other than those in the present suit, and was not therefore binding against persons not parties of it. The decree. is simply offered to establish the title of plaintiff to whatever title Calhoun had. It was a fact in his chain of title, and it was competent evidence against all the world on this point, as much as a deed from Calhoun to the plaintiff would have been. The decree simply transferred the legal title to the owner of the equitable title, and it was only used to show this.

The point, that an order of publication, and publication, were essential to the jurisdiction of the court in attachment cases, has been extensively discussed in this case. As the record recites that there was an order of publication and an actual publication according to law, it is obvious that no such question is presented by this case. In my opinion the question is a mere abstraction.

The question was presented and discussed in the case of Freeman vs. Thompson (53 Mo., 183), and the opinion of the court, or a majority of the court, was expressed on it. The question was, in that case, presented by the instructions, and though its decision might have been avoided, the opinion was not therefore an *obiter dictum*.

It frequently happens, that the decision of a single point in a case will determine the affirmance or reversal of the judgment in that case, but it does not follow that the court may not proceed to examine and decide other points which the record presents; and indeed the latter course is most satisfactory to all parties concerned, and saves the necessity of again resorting to the Appellate Court.

That opinion had the unqualified approbation of three of the judges, and any view, which I might entertain,would be superfluous. Besides it is difficult to see how this question has any practical importance. The statute requires an order of publication, and a publication, and prohibits the Circuit Court from entering a judgment until these pre-requisites have been performed. It can hardly happen—I doubt if it has ever

happened—that the courts have ever attempted to enter judgment, unless in their opinion and finding an order of publication had been made and a publication made in pursuance of such order; and further that the order and its compliance substantially conformed to the requisites of the statute.

The order of publication may be defective, and the mode of the publication made may not conform to the provisions of the statute, but whether the order or the publication is so defective that the court should not proceed to judgment, is a point decided by the court which tries the case, and its decision one way or the other is merely a matter for review in a direct proceeding to set aside the judgment.

There can be no doubt, that the court has jurisdiction to decide such questions, when jurisdiction has already been acquired by service of the writ of attachment, which of course must be a valid writ conforming essentially and substantially to the requirements of the act, and issued by the clerk in conformity with the power vested in him. There is then a case in court, and if every point arising subsequently is erroneously decided, still the purchaser under a judgment is not affected by such error. This general principle is essential to the security of hundreds of titles, and though doubtless in many instances, probably in this, the property of the defendant is ruinously sacrificed by the sale under the execution, it must also be borne in mind that frequently the *bona fide* purchaser, at a fair price, may equally be subjected to the risks of future accessions of value to the property sold, which form so common a temptation for heirs to wish to set aside sales, years after they are made, upon merely technical grounds.

It is said, however, that where there is no publication, such as is required by law, the court has no jurisdiction over the person of the non-resident, and can therefore pass no judgment on him, even so far as the property attached is concerned.

The judgment in such cases, it will be observed, can only

affect the property attached, and when the record shows a finding of the court, that there has been a legal order of publication, and a publication made in pursuance of such order, it is not apparent how this finding or determination of fact can be attacked collaterally any more than any other conclusion of the court in the course of its proceeding to final judgment. Its opinion on the sufficiency of the order of publication may be entirely wrong, reversible on review, but the error does not vitiate the title acquired under the judgment. In the language of Mr. Justice Miller, in Cooper vs. Reynolds, (10 Wall., 321), to hold such judgments, sales and deeds void "would be to overturn the uniform course of decision in this court, to unsettle titles to vast amounts of property long held in reliance on those decisions, and to sacrifice sound principles to barren technicalities."

This judgment must be reversed, since it is conceded that Mrs. McCown was entitled to dower in the land, and there was no right of immediate possession, and it is therefore reversed, with instructions to enter the judgment with a stay of execution until the widow's dower is assigned.

The other judges concur.