HICKS v. ELLIS ET AL. APPELLANTS.

1. **Summons, Sufficiency of**: Under a statute which requires that the writ of summons shall command the officer to summon the defendant "to appear in court on the return day of the writ, and at a place to be specified in such writ, to answer the petition of the plaintiff," (*R. S.* 1855, 1,222 ? 6) a writ is substantially sufficient which commands the sheriff to summon the defendant "to be and appear before the judge of the H. county circuit court, at F. in H. county, on the first Monday of June next, and answer the petition of N. C., plaintiff, and have you then and there this writ.

2. **Evidence**: PRESUMPTION OF CORRECTNESS OF OFFICIAL ACTION.— Nothing appearing to the contrary, it will be presumed that an order for a writ of *venditioni exponas* in a civil case, which appears by the record to have been made at a special term of court, was made at a special term, regularly held for the transaction of the general business of the court, and not at one appointed for the sole purpose of trying persons confined under criminal process, and at which no civil business can be lawfully transacted.

3. **Venditioni Exponas**: NATURE OF THE WRIT.—The writ of *venditioni exponas* is a writ of Execution ; under it the lien and levy of the original writ, which it is issued to enforce, will continue.

4. **Judicial Sale**: EXECUTION — VENDITIONI EXPONAS — EFFECT OF ACT OF MARCH 23, 1863, CONCERNING EXECUTIONS ON LEVY OF ORIGINAL WRIT.—Before the passage of the act of March 23, 1863, (*Sess. Acts*, 1863, p. 20) a writ of *venditioni exponas* had issued from the

circuit court of one county to the sheriff of another county to enforce a levy on real estate previously made under an execution, which had expired without a sale being made, because there had been no term of the circuit court of the latter county at which it could be made. The *venditioni exponas* was returnable to ·the December term, 1863, but for the same reason no sale was made till March, 1865. *Held*, That under the 3rd section of that act the original levy remained in force, and the sale then made was valid. That section applies to any execution issued from a court of record in one county to the sheriff of another, under which real property might be sold, whether the levy was made under such execution or under some other writ, which it supplemented or succeeded.

5. **Alias Fi. Fa. no Abandonment of Previous Levy, When:** A party, by suing out an *alias fi. fa.* directed to the sheriff of one county, does not abandon a levy already made under a writ issued to the sheriff of another county.

*Appeal from Jackson Circuit Court.*

*F. M. Black & A. Comingo* for appellants.

1. *Venditioni exponas* was the proper writ to preserve the lien created by the levy of the *fi. fa. Porter v. Mariner*, 50 Mo. 364; *Lackey v. Lubke*, 36 Mo. 115; Herm. on Ex. 26, 331.

2. It is not necessary that the *venditioni exponas* be issued at the return term of the *fi. fa. Smith v. Spencer*, 3 Ired. 256; *Taylor v. Doe*, 13 How. 287.

3. The *vendi.* was kept alive until a term of the Jackson Circuit Court was held by the act of March 23, 1863, and especially the 3rd section. The term "execution," as used in the act, is broader than and includes writs of *venditioni exponas*. 1 Bouvier Law Dict. 495; 2 Ib. 621; Wag. Stat. 601, § 1. It is also claimed that this act keeps alive only such writs as had been levied, and does not affect this one, because it had not been levied. The very nature of the writ precludes the necessity of a levy, and this writ comes within the object of the statute. *Wood v. Messerly*, 46 Mo. 255; *Stewart v. Severance*, 43 Mo. 322; *McDonald v. Gronefeld*, 45 Mo. 28; moreover the "*fi. fa.*" was first levied, property advertised for sale, and the *vendi.* issued to

complete the sale, and was a part of the original levy, and the *fi. fa.* and *vendi.* are to be taken together, and come within the literal language of the statute. Herm. on Ex. 331.

4. While the sheriff's deed of March 15, 1865, calls the writ under which the sale was made an "alias execution,"—yet it recites the judgment, execution, levy, failure to make sale, and the reasons therefor, the order and the substance thereof and the issue of writ thereunder—and is sufficient. The Jackson Circuit Court was suspended by operation of law. Acts 1860 and 1861, p. 510; Acts 1863, pp. 154, 161; Acts 1863-4, pp. 296, 297.

5. The issuance of execution to sheriff of Howard county in August, 1862, was no abandonment of the levy in Jackson county. Rev. Stat. 1855, p. 737, §8.

6. There is nothing in the record offered by the plaintiff to show how the special term was called, nor to show that it was not an adjourned term. It does not purport to give any of these proceedings. The presumption is that it was rightfully held.

*Russell Hicks* respondent p. p.

1. The Howard Circuit Court had no jurisdiction of the original process offered in evidence, nor of the person of defendant Maughs. The judgment does not recite that he was served with process, and the summons shown in the transcript is defective. The statute (R. S. 1855, p. 1222, § 6), prescribes the requisites of this writ: 1st, that defendant be summoned to appear *in Court*; 2nd, that it be on the return day of the writ; 3rd, at a place to be specified in such writ. None of these things were done in this supposed summons. *Bush v. Doy,* 1 Kansas 86; *Bobb v. Graham,* 4 Mo. 223; *Wragg v. The Bank,* 8 Porter (Ala.) 196. The defendants in that suit had a right to insist on the notice required by the statute; that not having been given was a fatal defect, and rendered the sale void. *Coffin v. Field,* 7 Cush. 359; *Clark v. Lewis,* 35 Ills. 422; *Cook v.*

*Gibbs*, 3 Mass. 195; *Gould v. Barnard*, 3 Mass. 199; *Streeter v. Frank*, 4 Chand. (Wis.) 94; *Shrewsbury v. Mt. Holley*, 2 Vt. 220; *Hollingsworth v. Barbour*, 4 Pet. 474.

2. The Howard Circuit Court, at the special term in January, 1863, had no jurisdiction to make the order for the *vendi.*, and the writ issued thereunder was void. Rev. Stat. 1855, p. 540, §§ 47 to 53; *Dulle v. Deimler*, 28 Mo. 583; *Williams v. Cable*, 7 Conn. 123; *White v. Riggs*, 27 Me. 114. The recital of a special term in the transcript must be taken as true, unless contradicted by some other part thereof. *Hahn v. Kelley*, 34 Cal. 392. This was not done. The power conferred by the *venditioni exponas* was special and limited in point of time to the return day thereof, and the sale made long after the return day thereof was void. *Rogers v. Cawood*, 1 Swan 142; *Overton v. Perkins*, 10 Yerger 331; *Barden v. McKinnie*, 4 Hawks 282; *Lackey v. Lubke*, 36 Mo. 122; *Lessee of Glancy v. Jones*, 4 Yeates 214.

3. The provisions of the special act of 1863 have no bearing on the original execution issued to Jackson county, and the original levy made thereunder, or the *vendi.* under which the sale was made. The first section does not apply to it, because it was issued before the passage of the act; nor does the second section, because the writ was not levied, and could not have been levied on the land; nor did it nor could it continue any lien on the land. The lien was created by virtue of the levy under the original execution, and continued under that execution until abandoned or discharged. That lien was in nowise affected by the *vendi.* It was neither extended nor shortened. Nor does the third section apply. The *vendi.* was not and could not be levied, and as no levy was made, none could remain by force of the *vendi.*; and as the act made no provision where a sale under a *vendi.* should be had, the time of sale thereunder remained as theretofore fixed by the statute and common law, and neither gave the sheriff any authority to sell after the return day of the *vendi.* The office of

a *vendi.* is to secure to a judgment creditor the benefit of a levy and a lien thereby created, when from some cause other than his own fault or negligence a sale could not be made before the return day of the original writ. *Cox v. Joiner,* 4 Bibb 95; *Irwin v. Buckle,* 3 Bibb 344-5; *Bellingall v. Duncan,* 3 Gillman 447. This *vendi.* was a simple command to sell the land already levied upon. Its authority ceased on and after the return day thereof.

4. The issuing to the sheriff of Howard county an alias execution, after the levy of original, and before the *vendi.* issued, was an abandonment of the first levy, and the sale made under the *vendi.,* on the levy thus abandoned, communicated to the purchasers no title. *Alley v. Carroll,* 3 Sneed 110; *Eckhols v. Graham,* 1 Call. 492; *Amyett v. Backhouse,* 3 Murphy 67

Hough, J.—This was an action of ejectment. Both parties claimed title through G. M. B. Maughs; the plaintiff by direct conveyances from said Maughs, executed in 1868 and 1873, and defendant by a sale under execution against said Maughs, made in 1865. Whether the sale under execution was a valid one, and passed the title of said Maughs to the property in controversy, is the question presented for our determination. In April, 1860, suit was instituted in the Circuit Court of Howard county by *Nancy Carrole v. James H. Reed, J. D. Smith* and *G. M. B. Maughs,* on two promissory notes executed by them. Service was had on Smith in Howard county. The following writ directed to the sheriff of Jackson county, accompanied with a copy of the petition, was served according to law :

STATE OF MISSOURI, ⎱
COUNTY OF HOWARD. ⎰ Sct.

*State of Missouri to the Sheriff of Jackson County, greeting:*

We command you to summon James H. Reed and G. M. B. Maughs to be and appear before the Judge of the Howard County Circuit Court at Fayette, in Howard county, on the

first Monday of June next, and answer the foregoing peti-
tion of Nancy Carrole, plaintiff, and have you then and
there this writ.   Witness Charles H. Stewart, clerk of the
said court, under the seal thereof, at office in Fayette, on
the 24th day of April, 1860.

[L. S.]                    .                    C. H. STEWART, Clerk.

On the 10th day of December, 1860, final judgment by
default was rendered against all the defendants.   Execu-
tion was issued on this judgment on the 31st day of
January, 1861, directed to the sheriff of Jackson county,
returnable on the first Monday of December following,
which was levied upon the land in controversy, and duly
returned with said levy indorsed, no court having been
held in Jackson county prior to the return day of said
writ, at which said land could be sold.   On the 1st day of
August, 1862, execution was issued to the sheriff of Howard
county, which was returned unsatisfied.   On the 19th day
of January, 1863, in pursuance of an order made by the
Howard Circuit Court on the 3rd day of said month, reciting
the levy and failure to sell under the execution issued in 1861,
a writ of *venditioni exponas*, returnable to the second succeed-
ing term, was issued to the sheriff of Jackson county, by
virtue of which said sheriff advertised and sold the property
in controversy on the 15th day of March, 1865, no term of
the circuit court having been held in said county of Jackson
prior to that time.   At said sale the defendant Mastel and
one Ellenberger became the purchasers, and received a deed
from the sheriff.   In 1867 Ellenberger conveyed his interest
to Mastel, under whom the other defendants claim possession.
The regular time for holding the circuit court in Howard
county during the years in which the foregoing proceedings
occurred was on the first Mondays of June and December.
The term at which the writ *venditioni exponas* was ordered
is thus designated in the entry of record : "Howard Circuit
Court, special term, January 3rd, 1863.   At a special term
of the Howard Circuit Court, begun and held at the court-

house in the City of Fayette, Howard county, Missouri, on the 3rd day of January, 1863, were present Hon. George H. Burkhart, Judge of said court, &c.," then follows the order of *vendi.* A duly certified transcript of all the foregoing proceedings in the circuit court of Howard county and a certified copy of the sheriff's deed were offered in evidence, but were excluded by the court on the following objections made by the plaintiff:

1st. Judgment against Maughs and others was and is absolutely void, said court having no jurisdiction over the person of said defendant, as appears by the record offered in evidence.

2nd. The Howard Circuit Court had no jurisdiction to order a *venditioni exponas* at the special term held in January, 1863; said order and writ were nullities, and gave the sheriff no power to sell.

3rd. Even if said *vendi.* was regularly issued, the sheriff could not sell the land described therein after the return day of the writ.

4th. The issuance of the execution to the sheriff of Howard county in August, 1862, was an abandonment of the levy made in Jackson county in 1861.

5th. The deed fails to recite the names of the parties to the execution, and shows no legal authority to sell the land.

6th. The deed does not recite any execution in form or substance, known to the statutes of Missouri, concerning executions, or known to the common law, and is therefore void.

The deed offered in evidence did not, *in totidem verbis,* state the names of the parties to the execution under which the levy was made, but they were clearly ascertainable from other recitals in the deed, and we are inclined to think that the deed of itself was admissible, though it is not necessary to determine this point, as another deed from the sheriff, perfect in all respects, dated the 20th day of March, 1873, was offered by the defendant, to which the same objections heretofore stated were made, and none

other, and the same was excluded by the court. As this conveyance was subsequent to the date of the deeds from Maughs to the plaintiff, and no objection was made on that account, and as it cannot be pretended that the objections numbered five and six were applicable to it, it is quite evident that the court, in excluding the first deed and transcript, considered some one or all of the first four objections made by the plaintiff as fatal to the defendant's case.

As to the first objection, the case of *Payne v. Collier*, 6 Mo. 321, is, we think, sufficiently in point to be decisive of it. In that case the writ required the defendant to appear before the judge of the circuit court at the next term, to be holden at St. Louis on a certain day, and the writ was held to be sufficient. The statute prescribing what a writ of summons shall continue was the same then as now. The writ now under consideration is in our judgment equally specific. It commanded the officer to summon the defendants to appear before the judge of the Howard County Circuit Court, at Fayette, in Howard county, on the first Monday in June next, (which day was therein fixed as the return day of the writ,) and answer the petition of the plaintiff. This court will take judicial notice that the first Monday in June was the day fixed by law for holding the circuit court in that county, and the defendant was bound to take notice of that fact. A requirement to appear at that time, which was the return day of the writ, and answer the petition of the plaintiff, was tantamount to a requirement to appear in court on that day, and was a substantial though not a literal compliance with the statute. As was remarked by Judge McGirk, in the case cited, "there was no possible chance for the defendant to be deceived or misled about the matter."

The second objection based upon the provisions of Secs. 48 to 53 inclusive of the Rev. Stat. 1855, in relation to "Courts—Judicial power," wherein it is provided that *special adjourned* sessions may be held in continuation of the regular term upon

its being so ordered by the court or judge in term time, and entered by the clerk in the minutes of the court. It is further provided in one of said sections that *special* terms of the circuit court may be held for the trial of any person confined in jail two months before the regular term, but that the ordinary jurisdiction of the court can only be exercised at such special terms by the consent of the parties. The plaintiff seems to have overlooked the 45th section of the same statute, which is as follows : "If at any time after the commencement of a term it happen that the court shall not be held according to its adjournment, it shall stand adjourned from day to day until the evening of the third day ; or, if the judge of any court cannot attend any regular term, he may notify the sheriff of the county in which such court should have been held, previous to the first day of such term ; and it shall be the duty of such sheriff, by proclamation, at the court-house door, to adjourn such court to the next regular term, or to such *special or adjourned* term, as the judge shall direct." This section, in our opinion, furnishes ample warrant for designating as " special" terms other than those called for the trial of persons who have been confined in the jail for two months ; and as in such cases *omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium*, it devolved upon the plaintiff to show that the special term at which the order for the *venditioni exponas* was made was a special term appointed for the sole purpose of trying persons confined under criminal process.

The third objection involves the construction of the act of Assembly of March 23, 1863, in relation to executions. 3. VENDITIONI EXPONAS: nature of the writ. The *venditioni exponas* was issued in January, 1863, was made returnable to the December term 1863, but was not executed until March, 1865, and, unless such writs are within the purview of said act in relation to executions, it must be conceded that at the time the sale was made the force of the writ was spent and the sheriff had no authority to sell. *Bank v. Bray,* 37 Mo.

That act is as follows: " Sec. 1. That all executions hereto-
fore issued and not satisfied, either in whole or in part, and
all liens which accrued in virtue thereof, are hereby revived
and declared to be in full force, and that said liens shall
exist and continue according to the priority of said execu-
tions, until the same are satisfied ; and that in all cases
where said executions have been returned not satisfied,
either in whole or in part, it shall be the duty of the clerks
to issue new executions referring to the former ones, and
in case levies have been made to recite such levies in said
renewal executions, and authorize and command the officer
to whom such renewal executions are directed, to levy such
renewal executions upon additional property, if the former
levy shall be deemed insufficient to satisfy such executions;
but in case of sale of property under such executions, to
first exhaust the original levy before selling any property
embraced in such subsequent levy.    Sec. 2. That execu-
tions now issued, or that hereafter may be issued from any
court of record and levied upon real estate, if from any
cause the real estate shall not be sold at the next term of
court, from which said execution has issued or may here-
after be issued, said execution and lien of said levy shall
remain and continue in full force until a term of court is
held in the county when said property may or can be sold.
Sec. 3. That executions now issued or that may hereafter
be issued from a court of record in one county and sent to
the sheriff of any other county in this State, shall be levied
on real estate and from any cause the circuit court of said
last mentioned county shall not be held before the return
day of said execution, said sheriff shall retain said execu-
tion, and the levy made by virtue thereof shall remain in
full force until there shall be a term of the circuit court in
said last mentioned county at which said real estate may
be sold."    The general purpose of this act is plain, though
its phraseology is exceedingly awkward and inexplicit.    It
has several times been the subject of judicial interpreta-
tion, but in no case precisely like the present.

A writ of *venditioni exponas* is undoubtedly a writ of execution. Bouvier Law Dict. tit. Execution-*venditioni exponas*. It was so denominated in *Kane v. McCown*, 55 Mo. 196; and in *Wood v. Augustine*, 61 Mo. 46. In *Webb v. Armstrong*, 5 Humph. 379, it was held that a writ of *venditioni exponas* was an execution within the meaning of the statutes authorizing motions against sheriffs for failure to return executions. It is an execution or writ to satisfy the judgment on behalf of the plaintiff. It is sometimes spoken of as a branch of the writ of *fieri facias*, and it may contain a *fieri facias* clause. Freeman on Ex., Sec. 57. The effect of a sale under it is the same as though the sale had been made under the original writ before return day. The lien and levy of the original writ continue under the *venditioni exponas*. Freeman on Ex., Sec. 60. The *venditioni exponas* when issued relates to, and, as it were, identifies and incorporates itself with the previous execution and levy. *Taylor v. Mumford*, 3 Humph. 67.

It is especially urged, as a reason why this act does not apply to the writ in question, that the first section, in so far as it is applicable to writs of *venditioni exponas*, relates only to such writs issued after the passage of the act, and in pursuance of the provisions thereof, and that the second and third sections relate only to writs which require a levy to be made. It is too plain for argument, we think, that when the third section speaks of executions "that may hereafter be issued," it contemplates and includes the "renewal executions" provided for in the first section, that is, writs of *venditioni exponas* with a *fieri facias* clause, as well as the ordinary writs of *fieri facias*. This act certainly intends to keep alive until they could be satisfied the executions which it required the clerks to issue, and yet, under the construction contended for by the plaintiff, such executions would not come within the terms of the third section. For, by the terms of the act, no levy is to be made under such writs, unless the former levy

should be deemed insufficient to satisfy the execution, and they would not therefore be continued in force until a sale could be made, in the event it should be unnecessary to make an additional levy thereunder. Such a construction would manifestly defeat the obvious purposes of the act. Now it is evident to us that the words "executions now issued," in the third section, are intended to cover and include every species of execution which said section contemplates, "may hereafter be issued," and these words would, therefore, include executions under which no levy need be made, for such executions, with or without a *fieri facias* clause, might have issued before the passage of the act. That is to say, if the section covers executions issued after the passage of the act under which no levy can be made, it will equally cover executions issued before the passage of the act under which no levy can be made, whether they contain a *fi. fa.* clause or not, for as to both classes, those issued before and those issued after the passage of the act, the words "shall be levied on real estate," are applied by the statute. We are of opinion, therefore, that any execution issued from a court of record in one county to the sheriff of another county, under which real property might be sold, whether the levy was made under such execution or under some other writ which it supplemented or succeeded, comes within the provisions of the third section. Any other construction would be entirely too narrow and too technical, and would, in many instances, wholly thwart the highly beneficent purposes of the act. This court has at all times been disposed to put a liberal interpretation upon the provisions of this act, and to make the grammatical construction thereof yield to the obvious intent of the Legislature. *Wood v. Messerly et al.*, 46 Mo. 255. It would seem to us strange indeed, if it were true, that while the Legislature had provided that all executions issued before the passage of the act, and not satisfied either in whole or in part, and all liens which had accrued thereunder, should continue in full force until satisfied,

and that an execution *venditioni exponas* issued the day after the passage of the act, based on executions previously levied and returned not satisfied, should also continue in force until satisfied; that a *venditioni exponas* issued the day before the act passed, on an execution levied and returned not satisfied, should not be continued. We are of opinion that the writ in question was continued in force by the act of March 23, 1863, and that the sale made thereunder was valid.

Authorities have been cited from other states to sustain the fourth point, but we do not conceive them to be alto-

5. ALIAS FI. FA. no abandonment of previous levy, when:

gether applicable to the case at bar. In *Yarborough v. State Bank* 2 Dev. 23, it was held that a levy made and returned is waived by taking out an *alias fi. fa.*: and that a *venditioni exponas* with an *alias fi. fa.* clause, is the proper writ to keep up the lien created by the levy, when an additional levy is desired. But it was competent under our statute for the judgment creditor to have several executions issued to different counties at the same time, and the *alias* execution, which it is claimed in this case operated as an abandonment of the levy, was issued to the sheriff of Howard county, and not to the sheriff of Jackson county, where the levy was made. No *venditioni exponas* could have issued to the sheriff of Howard county on the levy made in Jackson, and no *alias fi. fa.* was issued to Jackson county. The judgment will therefore be reversed and the case remanded. The other judges concur.

REVERSED.