MARY CORNELIA SKILLMAN et al., Appellants,
v. MARTIN L. CLARDY.

Division One, April 2, 1914.

1. **QUIETING TITLE:  Pleading in Language of Statute:  Considered Collateral Attack on Prior Tax Judgment.**  A petition couched in the general verbiage of the statute concerning the ascertainment and determination of titles (Sec. 650, R. S. 1899) is not a direct attack on the tax judgment and sheriff's deed under which defendant claims, but if any attack at all upon them is ambushed in its general allegations it is a collateral attack; and, hence, mere irregularities in the tax suit not going to the jurisdiction are not sufficient to avoid the judgment of the circuit court for taxes or the sheriff's deed thereunder.

2. **IDEM SONANS:  Abigal for Abigail:  Tax Suit by Publication.** Abigal is *idem sonans* for Abigail, and Hamelton for Hamilton, and error in the spelling will not avoid a judgment in a tax suit brought by order of publication to nonresidents.

3. ——: ——: ——:  **Dead Defendant.**  And whether Abigal is *idem sonans* for Abigail is of no consequence if two years

Skillman v. Clardy.

before the suit was brought Abigail had departed this life. A deceased person cannot be brought into court.

4. **CONSTRUCTIVE SERVICE: Newspaper: Part of Name Omitted.** Where the circuit court found that defendant had been duly and legally brought into court by constructive notice, the judgment rendered upon such publication cannot be attacked in a collateral proceeding for mere irregularities of the clerk in making said order. The judgment in a tax suit cannot be avoided for that the order of the clerk made in vacation directed publication to the nonresident defendants to be made in the "Bloomfield Vindicator" and the proof of publication referred to the paper as the "Vindicator"—the judgment reciting that "defendants have been legally notified of the commencement of this action by publication in the Bloomfield Vindicator, a newspaper published in Stoddard county," and there being no attempt to show there were two newspapers called the "Vindicator" published in Stoddard county. Besides, the statute in force at the time the suit was brought (1890) did not require an order of publication to designate a newspaper when the publication was made in the county where the suit was instituted.

5. ———: **To Appear Before Sixth Day of Term.** Where the order of publication was dated June 10th and the next regular term of the circuit court began on September 8th, a notice requiring defendants to appear on or before the sixth day of said term did not invalidate the judgment for taxes rendered therein on the twelfth day of the term, the general statute then requiring defendants to plead on or before the third day of the term, and the special statute requiring him to appear "on a day to be named" in the order, with which statute the order literally complied.

6. **TAX SUIT: Defective Tax Bill.** On questions of jurisdiction in a suit for taxes the petition and order of publication are to be looked to, and not the tax bill, which is merely evidentiary. Any defects in the tax bill will not avail in a collateral attack to invalidate the judgment.

7. ———: **Owners of Land: Judgment Finding.** Where the judgment in the tax suit recited "the court finds the issues for the plaintiff" and the petition charged that the defendants were the owners of the land, that was a finding that defendants were the owners.

8. ———: **De Minimis: Singular for Plural.** The omission of the letter "s" from the word "defendants" at a place or two in the judgment is not a fatal irregularity.

9. ———: ———: **Failure to Erase Blank Years in Judgment.** The failure of the clerk to erase the words "for the years" for which no taxes were due or recovered, in the blank form of the judgment record, is no ground for invalidating the judgment otherwise in proper form.

10. ———: **Personal Judgment.** Even though there is language in the judgment for taxes appropriate to a personal judgment against defendants, if there is other language to the contrary, it will be held to be a special judgment against the land.

11. ———: **Sheriff's Deed: Signature by Initials: Full Name in Body.** If the full name of the sheriff appears in the body of the deed the fact that he signed it by the initials of his given name and his full surname will not invalidate it if he was fully identified by the certificate of acknowledgment, the main purpose of which is to identify the person who signs the deed.

12. ———: ———: **Abbreviations in Descriptions.** Customary abbreviations in the description of the land in the sheriff's deed, of the kind authorized by the statute, do not invalidate the deed.

13. ———: ———: **Sale in Bulk.** The sale of the land in bulk will not avail the defendants in a collateral attack upon the tax judgment and deed.

14. ———: ———: **Form.** The statute is silent on the form of a tax deed; and as the whole scheme of collecting delinquent taxes was changed in 1877, and suits, as in ordinary cases, were prescribed to be brought in courts of general jurisdiction, the tax deed in its terms should follow the long-existing statute (Sec. 4954, R. S. 1909) relating to the narrations of sheriffs' deeds in general, and if that is done it is sufficient. The fact that the deed recites that notice of the time and place of sale was given "by advertisement in the Vindicator, a newspaper published in my said county," if defect at all, does not invalidate the deed.

15. **TAX SUIT:  Against Deceased Persons.** If the owner of the title was alive and made a party, the fact that two other persons joined as defendants were dead at the time the tax suit was brought is unimportant. A judgment void as to one defendant is not necessarily void as to all.

16. **JUDGMENT IN TAX SUIT: Multitude of Cumulative Irregularities.** There is no unity of defects which do not dovetail together.  One alleged irregularity in a tax judgment and sale does not aid another to make out a lack of jurisdiction, in a collateral attack on the judgment. It is not the law that defects and irregularities which are not fatal when taken singly can be so cumulated that when taken all together they amount to one fatal defect.

17. **QUIETING TITLE: Judgment for Defendant: Defects in His Title.** If plaintiffs' ancestor lost title in the tax judgment and sale, defects in the mesne conveyances from the purchaser at the tax sale to the defendant are of no concern to plaintiffs. They must show title in themselves before they can question the title of a defendant who holds under mesne conveyances from the common source.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard,* Judge.

AFFIRMED.

*S. C. Rogers* and *C. M. Skillman* for appellants.

(1) The court erred in holding that the petition in the suit for back taxes, and which led up to the making of the sheriff's deed to Jones and Weber, stated facts sufficient to constitute a cause of action, or in any essential respect complied with the requirements of the law. (a) The action must be prosecuted against the owner of the property. Sec. 7682, R. S. 1889. (b) The petition does not state who was the owner of the land; nor does it state that the defendants or either of them were the record owners, and if not record owners how they were interested, as is necessary. Fleming v. Tatum, 232 Mo. 678; Sec. 2027, R. S. 1889; Wall v. Holladay-Klotz, 175 Mo. 411. (c) There is a variance between the allegations of the amount of taxes due as alleged in the petition from that as shown by the tax bill filed therewith. (2) The court erred in holding that the back tax bill attached to the petition in evidence was in conformity to the law and showed a proper assessment and levy against the land in controversy. (a) The back tax bill should set out the smallest legal sub-divisions. Secs. 7553-7555, 7683-7703, R. S. 1889; State ex rel. v. Burrough, 174 Mo. 706; Keene v. Barnes, 29 Mo. 385; State ex rel. v. Sargeant, 76 Mo. 559. (b) The back tax bill of respondents is dated January 6, 1889. (c) The back tax bill

does not show the same figures, total or result, as alleged in the petition. Sec. 7682, R. S. 1889; Fleming v. Tatum, 232 Mo. 678; Wall v. Holladay-Klotz, 175 Mo. 411. (3) The court erred in holding that the court had jurisdiction of the parties in the proceeding wherein the purported judgment in evidence was rendered and upon which the tax deed offered in evidence is based. (a) In actions wherein substituted service is had, the statute must be strictly complied with or no jurisdiction is acquired and the judgment thereunder is void. Chilton v. Tam, 235 Mo. 498; Miller v. Keaton, 236 Mo. 710; Woodruff v. Lumber Co., 242 Mo. 387; Shuck v. Moore, 232 Mo. 649; Kunzi v. Hickman, 243 Mo. 103. (b) In the order of publication in this cause the names are spelled Hamelton instead of Hamilton, and Abigal instead of Abigail. Whelen v. Weaver, 93 Mo. 430; Troyer v. Wood, 96 Mo. 478; Chamberlain v. Blodgett, 96 Mo. 482; Simonson v. Dolan, 114 Mo. 176; Miller v. Keaton, 236 Mo. 711. (c) The order of publication requires that the publication be published in the "Bloomfield Vindicator," a newspaper published weekly in Stoddard county, Missouri," and the proof of publication shows that it was published in "The Vindicator, a weekly newspaper published in the county of Stoddard," Missouri. (d) The order of publication orders the defendants to appear on or before the sixth day of the term. This was in contravention to Sec. 2042, R. S. 1889. Sec. 2022, R. S. 1889; Cummings v. Brown, 181 Mo. 716. (4) The court erred in holding that the judgment offered in evidence in this case is a valid judgment and upon which a valid sale thereunder and title thereupon could be based. (a) The judgment does not find defendants or any of them were owner or owners of the property as was necessary. Secs. 7682-7683, 2206, R. S. 1889; Rothenberger v. Garrett, 224 Mo. 201; Hughey v. Eyssell, 167 Mo. App. 563; Connelly v. Railroad, 169 Mo. App. 272. (b) The order of publi-

cation states that the object and general nature of the action is to enforce the lien of the State of Missouri, etc., which is the basis of the judgment in this case, while upon the face of the judgment it appears to be a personal one, which is improper. State ex rel. v. Snyder, 139 Mo. 549; Nolan v. Taylor, 131 Mo. 224; Stewart v. Allison, 150 Mo. 346; O'Day v. McDaniel, 181 Mo. 535; Allen v. McCabe, 93 Mo. 143. (c) The judgment finds "that defendants had been legally notified of the commencement of this action, by publication in the Bloomfield Vindicator, a newspaper, published weekly in Stoddard County, Missouri, the last insertion being at least fifteen days before the first day of this term of this court. Proof of publication filed." Whereas the proof filed shows it was published in the "Vindicator." (d) The judgment is for a larger amount than asked for in the petition. (5) The court erred in permitting respondent to introduce in evidence certified copy of the sheriff's deed from J. R. Barham, sheriff of Stoddard county, to Ligon Jones and Emil M. Weber, and in holding that the same was a valid and legal deed, the same not corresponding with the judgment nor complying with the law in any essential respect in such cases made and provided, and that it was sufficient as a basis for respondent's title, all over the objection and exception of appellants. (a) It is not in conformity to the judgment, or the law, in that only so much of the real estate should be sold as may be necessary to satisfy the judgment and costs. Sec. 7683, R. S. 1889; Guffey v. O'Reiley, 88 Mo. 424. (b) The tax deed does not show the amount of taxes for each year. Guffey v. O'Reiley, 88 Mo. 424. (3) The tax deed recites it was made by Jonathan R. Barham, sheriff, throughout, whereas it is signed by J. R. Barham, and so acknowledged. (d) It does not state how the property was advertised as the law requires; it only states the conclusion of the sheriff, which is insufficient; a copy of the advertise-

ment should be attached to the deed. Secs. 310-311, R. S. 1889; Sec. 4941, R. S. 1889; Large v. Fisher, 49 Mo. 307; Meriwether v. Overly, 228 Mo. 235; Spurlock v. Dougherty, 81 Mo. 171; Gregg v. Jasberg, 113 Mo. 38; Moore v. Harris, 91 Mo. 621; Pearce v. Tittsworth, 87 Mo. 640; Hopkins v. Scott, 86 Mo. 148. (e) The sheriff's deed does not conform to the judgment, in that the judgment is against but one defendant and does not state which, and the tax deed states the judgment was against all of the defendants named, and the tax deed upon its face purports to convey the interest of all the defendants and also states that said property was ordered sold, whereas the judgment does not order any of the property sold, and does not show the amount of taxes for each year, nor does it show the amount of taxes for each tract for each year. (f) The sheriff's deed does not conform to the judgment because it does not properly describe the property mentioned in the petition or judgment.

*N. A. Mozley* for respondent.

(1) Where the court had jurisdiction of the subject-matter and of the person, as the court unquestionably had in the tax proceeding in evidence in this case, that some of its subsequent actions may have been irregular will not affect the validity of the tax deed, nor entitle those claiming under the defendant in that proceeding to make a collateral attack upon it. Gibbs v. Southern, 116 Mo. 204; Sanzenbacher v. Santhuff, 220 Mo. 274; Jones v. Driscol, 94 Mo. 190; Evarts v. L. & M. Co., 193 Mo. 444; Morrison v. Turnbaugh, 192 444; Warren v. Manwaring, 173 Mo. 21. (2) The court had jurisdiction of the subject-matter of the proceeding to enforce the State's lien for taxes against the land in controversy by virtue of the Constitution and laws of the State. Warren v. Manwaring, 173 Mo. 21; Gibbs v. Southern, 116 Mo. 204. And that jurisdic-

tion was put in motion by the filing in court of the petition in the back tax proceeding wherein the State of Missouri, at the relation and to the use of Joseph Howell, collector of the revenue in and for the county of Stoddard, in the State of Missouri, was plaintiff and Samuel B. Hamilton, et al., were defendants. This petition states every essential fact necessary to good pleading. Sec. 7682, R. S. 1889; State ex rel. v. Cummings, 151 Mo. 49; Gibbs v. Southern, 116 Mo. 204. Said petition contained an affidavit of plaintiff's attorney as to the nonresidence of the defendants which was sufficient to authorize service on them by publication. Sec. 2022, R. S. 1889; Allen v. Ray, 96 Mo. 542. Upon the filing of said petition and affidavit of nonresidence, to-wit, on the 10th day of June, 1890, an order of publication, directed to Samuel B. Hamilton et al. was issued by the clerk of the circuit court of said county and duly published in the Vindicator, a weekly newspaper published in said county, for four weeks successively, the last insertion, as shown by the verified proof of publication, being on the 15th day of August, 1890, more than fifteen days before the 8th day of September, 1890, the day on which the regular September term of the circuit court of said county for the year began, as required by law. R. S. 1889, secs. 311, 2028. And the fact that said order of publication directed and the decree found that it was published in the "Bloomfield Vindicator" and the proof of publication shows it was published in the "Vindicator" in no wise affects the validity of the judgment or the legality of the sheriff's deed made in pursuance of the sale under said judgment. It was not necessary under the statute that the order of publication should designate, nor the decree find, the name of the paper in which the order was published. That it was published in a weekly newspaper of Stoddard county for the requisite time required by law is sufficient. Such publication brings the defendant into court and not the

name of the paper. Sec. 2028, R. S. 1889; McDermott
v. Gray, 198 Mo. 266; Coffin v. Elgin, 243 Mo. 455;
Blickensderfer v. Hanna, 231 Mo. 276; State ex rel. v.
Blair, 245 Mo. 680. Nor is there anything of substance
in appellants' assignment that the name of the defend-
ants is spelled "Hamelton" instead of "Hamilton."
It is Hamilton either way it is spelled. The practiced
ear can detect no difference in the sound, nor is there
any difference in the proper pronunciation of it. This
court has decided that "Sibert" and "Seibert,"
"Josef Maier" and "Joseph Meyer," "Hudson" and
"Hutson," "Wilkerson" and "Wilkinson," "Havely"
and "Haverly," "Blackenship" and "Blankenship"
and "Lossene" and "Lawson" are *idem sonans.*
Green v. Meyer, 98 Mo. App. 438; Maier v. Brock, 222
Mo. 74; Cato v. Hutson, 7 Mo. 142; State v. Hutson, 15
Mo. 512; Wilkerson v. State, 13 Mo. 91; State v. Havely,
21 Mo. 498; State v. Blankenship, 21 Mo. 504; State
v. Pullens, 81 Mo. 387; 29 Cyc. 272-275. (3) The
remaining assignments of appellants, not noticed above,
relate entirely to mere matters of alleged irregularity
which might (if they exist) have been corrected in said
tax suit on motion, appeal or writ of error and, hence,
are not available in this collateral proceeding.

LAMM, J.—From a judgment of the Butler Cir-
cuit Court in favor of defendant, quieting title in him
to a quarter section of land, plaintiffs appeal.

The petition reads:

"Plaintiffs state that Samuel R. Hamilton died
intestate in the year 1875, seized in fee of the real
estate hereinafter described; that the plaintiffs are the
sole surviving and legal heirs of Samuel R. Hamilton,
deceased; and that by inheritance, as such legal heirs
of Samuel R. Hamilton, deceased, they are the owners,
in fee simple, and claim title to the following real es-
tate, lying, being and situate in the county of Stod-
dard, in the State of Missouri, to-wit: the northwest

256 Mo. 20

quarter of section three, township twenty-three north. of range twelve east, containing one hundred and sixty acres, more or less.

"Plaintiffs further state and aver that the said real estate is not in the actual possession of any person or persons, whatsoever, but is wild and uncultivated timber land; that the defendant claims some title, estate or interest in and to said premises, the nature and character of which claim is unknown to plaintiffs and cannot be described herein, except that said claim is . adverse and prejudicial to these plaintiffs.

"Wherefore, the premises considered, the plaintiffs ask the court to try, ascertain and determine the estate, title and interest of the plaintiffs and the defendant herein, respectively, in and to the real estate aforesaid, and to define and adjudge, by its judgment or decree, the title, estate and interest of the parties, plaintiff and defendant, herein, severally, in and to the aforementioned premises, according to the statute in such cases made and provided, and for the costs in this behalf expended."

Admitting that defendant claims some interest and title and averring that his title is in fee simple, the answer goes on to plead estoppel generally through laches, and then turns the tables on plaintiffs by alleging that defendant is the owner in fee simple of the real estate in controversy and that plaintiffs claim some right or interest therein, the precise character of which defendant says he does not know except that such pretended claim is adverse to him, wherefore his prayer (*mutatis mutandis*) is the same as plaintiffs.

The reply was a general denial.

The cause was treated, *nisi,* as in equity. It was stipulated in open court that one Samuel B. Hamilton is the common source of title. The following sufficiently outlines the case, to-wit:

One Samuel *R.* Hamilton, a citizen of Ohio, owned the land and died intestate in 1876, leaving Samuel *B.*

his only son and heir and Abigail Maria his widow. Abigail Maria died in 1888, her dower estate for life falling in at that event. The title became vested in. Samuel *B.* by descent cast on the death of his father. Samuel *B.* died in 1899, intestate, leaving surviving him three children, his wife Rebecca having died in 1894. Those children (and his only heirs) were Mary Cornelia, Anna Eliza, and Hannah Maria, two of whom married and the three (with the husbands of those married) are plaintiffs in the instant case. Their title, if any, is by descent cast on them as heirs of Samuel B.

There is no question of the Statute of Limitations, the land being wild.

In 1890 a judgment was rendered against the land for taxes of 1887 and 1888 in a suit then pending in the Stoddard Circuit Court in favor of the collector of that county against "Samuel B. Hamilton, and Rebecca Hamilton, his wife, Abigail Hamilton, widow of Samuel R. Hamilton, deceased, and Andrew Hamilton, defendants." Andrew Hamilton (a collateral kinsman) had no title at any time and was dead at the time suit was brought. On that judgment execution issued in January, 1891, and in March of that year a sale was made under the sheriff's hammer to Ligon Jones and Emil M. Weber, an executed deed following in consummation of that sale.

By a conveyance defendant, Clardy, acquired their title in 1903—Jones, Weber and Clardy paying the taxes levied from 1889 down to this date.

If that tax sale conveyed title, the case was well decided. If not, it was badly decided.

There were many objections made to the validity of the tax judgment and deed on many alleged defects. In oral argument learned counsel for appellants conceded a group of them were small ones, taken severally and one at a time, but he insists with spirit that (taken collectively as an aggregation) they had a cum-

ulative effect and invalidated the title. He illustrated his position by the homely proposition announced at our bar, to-wit: "Enough specks make an apple rotten." The *enough-specks* theory, thus making its virgin and blushing bow on the stage of real estate law, may well excite a mild judicial interest—an interest to be tempered by a word of caution, thus: If comparisons are not "odious" as some writers put it, they may be "odorous" as others will have it, and, finally, in dealing with similitudes must we not be chastened by the thought that so great a jurist as Lord MANS-FIELD found it wise to declare (so Lord WESTBURY vouches) "that nothing in law is so apt to mislead as a metaphor." [Knox v. Gye, 5 L. R. (H. of L.) l. c. 676.] We are told at the mother's knee that continual dropping wears away a stone, that enough pebbles change the courses of rivers, that while one swallow may not, yet many swallows may, make a summer, and why may not many specks spoil an apple?

We shall attend to the cumulative effect of "specks" on real estate titles before we dismiss this opinion.

I. For the purpose of showing that the petition was couched in the general verbiage of the statute, Revised Statutes 1899, section 650 (a form of pleading in ambush approved in Huff v. Laclede Land and Imp. Co., 157 Mo. 65, and tolerated ever since) we set it forth, supra, in words and figures. We **Quieting Title: Petition in Language of Statute: Collateral Attack.** allow ourselves an observation or two as a foreword, thus: In the exposition of that highly beneficial statute for quieting title the trend of the judicial mind has been to consider suits brought under it as of an equitable nature, except where the issue was title by limitation, accretion or the like, that is, one wholly cognizable at law. [Peniston v. Pressed Brick Co., 234 Mo. l. c. 709, and cases cited.] In that

view of it cases may be found where we have coun-
tenanced a bill in equity so framed as to invoke the
aid of section 650 commingled with other allegations
of purely equitable cognizance, thereby putting the
case clearly in equity on ancient and established heads
of equity jurisdiction as well as on the statute. We
need not go into any question relating to a bill directly
attacking a tax judgment and a deed on a sale under
that judgment on specifications averred with the full-
ness and precision of equity pleading. It suffices to
say for the purposes of this case that there can be no
doubt that a petition in the general form of the one
we are now dealing with is not a direct attack but,
if any attack on the tax judgment and proceeding is
ambushed in the general allegations of the petition, it
is a collateral attack, and so we have always held in
suits strictly under that section. [Evarts v. Lumber
& Mining Co., 193 Mo. l. c. 444 et seq.; Cooper v. Gun-
ter, 215 Mo. l. c. 562; Morrison v. Turnbaugh, 192 Mo.
l. c. 444 et seq.; Warren v. Manwarring, 173 Mo. l. c.
34; Shelton v. Franklin, 224 Mo. l. c. 355 et seq.; Lovitt
v. Russell, 138 Mo. l. c. 482 et seq.; South Mo. L. Co.
v. Carroll et al., 255 Mo. 357.]

The premises considered, we must be guided in
our judgment by the general doctrine of the law, to-
wit, that mere irregularities (or, if the word be pre-
ferred, *"specks"*) in a tax suit (by which suit the
taxes were merged into a judgment in a court of gen-
eral jurisdiction, and a sale made thereunder) are not
sufficient to overturn such judgment in a collateral at-
tack. *Contra,* nothing short of some capital vice
amounting to a lack of jurisdiction rendering the judg-
ment void can be successfully interposed to parry its
effect or overturn a sale thereunder. Tax judgments
stand precisely on the same foot as any other in that
particular and are protected by the same general prin-
ciple when assailed collaterally under section 650 or
in ejectment. [Schmidt v. Niemeyer, 100 Mo. 207;

Boyd v. Ellis, 107 Mo. 394; Gibbs v. Southern, 116 Mo. 204; Jones v. Driskill, 94 Mo. 190. *Vide,* also, the authorities last cited above.]

The right (and trite) doctrine was thus succinctly announced in Lovitt v. Russell, supra: ''No principle of law is more universally accepted in this country than that the judgment of a court of competent jurisdiction, so long as it stands unreversed, cannot be impeached in a collateral proceeding, on account of mere errors, or irregularities, not going to the jurisdiction.'' It is strictly by the standard of that pronouncement (and not otherwise) that the validity of plaintiffs' objections must be measured and adjudged.

II. Plaintiffs complain of alleged defects in the tax judgment and proceeding, in the tax deed and in defendant's chain of title subsequent to the tax deed. Of these *seriatim.*

(a)  *Of alleged defects in the tax judgment and proceeding.*

(1)  Something is made, *arguendo,* of the fact that the name ''Hamilton'' is spelt Hamelton, and that the Christian name Abigail is spelt Abigal in the order of publication. Surely, ''Abigal'' is *idem sonans* with Abigail—the letters *ai* being diphthongal in character, a digraph, and having a joint value equal to *a* (so a scholar tells me). Not only so, but, as the laws of man deal with the quick and not with the dead, and as Abigail Hamilton had departed this life two years before the tax suit and could not by any known form of service be brought into an earthly court (even on the sovereign matter of taxation under any name, either in Southeastern Missouri or elsewhere in the State, spelled well or ill) the pretermission of an *i* in the final syllable of her name is of no consequence. We were told in school to mind our p's and q's, but such exactness is of no force in jurisprudence in dealing with names after death. Clearly, too, Hamelton is *idem sonans* with ''Hamilton,'' when spoken collo-

quially or by the most skilled voice into the most exquisite ear.

(2) The order of publication made by the clerk in vacation in the tax suit directed publication to be made in the "Bloomfield Vindicator," a newspaper published weekly in Stoddard county, Missouri. The proof of publication made refers to the sheet as the "Vindicator." But the judgment narrates *inter alia,* as follows: "And it appearing to the court that defendants *have been legally notified of the commencement of this action by publication in the Bloomfield Vindicator,* a newspaper published weekly in Stoddard county, Missouri, for four weeks successively," etc., etc. It will thus be seen that while the affidavit of proof by the publisher leaves off the word "Bloomfield" from the title of his newspaper, yet the judgment inserts it on the fact found. Something is made of that fact, but the contention is without substance. Because: No attempt was made to show there were two papers called the "Vindicator" published in Stoddard county. We take judicial notice of the fact that there was then and now is a town known as Bloomfield in that county. It is a matter of common knowledge that the name of the town in which a paper is published is usually found in the caption or name of papers published therein, this for purposes of use or ostentation, identification and differentiation from other sheets, or local pride. To give the matter a proper setting, it must be noted that the statute in existence in 1890, at the time the tax suit was brought, did not require an order of publication to designate a newspaper when the publication was made in the county where the suit was instituted. [R. S. 1889, sec. 2028; Ib., sec. 2022; Coffin v. Elgin, 243 Mo. 455.] But if it did, then, the good sense of the thing is to be looked to. In State ex rel. v. Blair, 245 Mo. l. c. 694, a suit on drainage assessments, the order directed the clerk to insert a notice incident to establishing the district in the *West-*

*ern* Enterprise. The insertion was made in the *Rich Hill* Enterprise. In that case there was testimony that the paper was sometimes known as the "Western Enterprise" and sometimes as the *Rich Hill* Enterprise, but that there was only one paper published in Rich Hill with the word "Enterprise" a part of its name. It was ruled that the variance in the name of the paper, a variance much more pronounced than that we are dealing with, did not invalidate the notice. In Blickensderffer v. Hanna, 231 Mo. l. c. 107 et seq., a probate notice is dealt with. In that case there was an order by the court that notice be published in the "Lebanon Journal." It was in fact published in the *Chronicle.* On the theory that the statute did not require the court to designate the newspaper, the publication was held well enough. So, the failure was held to be at most an error or irregularity *where the court accepted the publication* (as it did in the case at bar) as a compliance with the order.

The acceptance of the publication by the court as in compliance with the law and with the order, as the judgment narrates in the instant case, is of stiff significance where the finding in the judgment is not assailed by the rest of the record, as here. In McDermott v. Gray, 198 Mo. l. c. 282, an equivalent matter to that now in judgment was up for consideration and a ruling was made controlling the question here, *viz.*:

"While it is true that in determining the validity of judgments rendered upon constructive notice we may look to such notice to see that it is directed to the proper party, for that goes to the jurisdiction of the court over the person; yet if the order of publication was directed to the proper party in his proper name and the proof of such publication is submitted to the court, and the court finds that the defendant has been duly and legally brought into court by such publication, a judgment rendered upon such publication cannot be attacked in a collateral proceeding for mere irregular-

ities of the clerk in making such order. Judge MAC-FARLANE, in Charley v. Kelley, 120 Mo. l. c. 142, in reviewing the authorities on this subject, states: 'It is said by Judge NAPTON in Kane v. McCown, 55 Mo. 200: When the record shows a finding of the court, that there has been a legal order of publication, and a publication made in pursuance of such order, it is not apparent how this finding or determination of fact can be attacked collaterally any more than any other conclusion of the court in the course of its proceedings to final judgment. [Brawley v. Ranney, 67 Mo. 283.] The court found that an order, previously made, was duly published. This finding is not assailable in this suit.' "

(3) At the time in hand (1900) the statute provided that in counties like Stoddard a defendant summoned or notified according to the provisions of chapter 33, Revised Statutes 1889, shall demur or answer the petition on or before the *third* day of the term at which he is required to appear, if the term shall so long continue, and if not, then before the end of the term, unless further time be given by the court. It also provided that the action shall be triable at the return term. [R. S. 1889, sec. 2042.] So, section 2022, *ibid*, provided that the order of publication should require the defendant or defendants "to appear on a day to be named therein and answer the petition, or that the petition will be taken as confessed." Now in the tax suit the order of publication (bearing date June 10, 1900) notified defendants to appear at the next regular term of the circuit court of Stoddard county to be begun and holden at the court house in the town of Bloomfield in said county on the eighth day of September next and (quoting) "on or before the *sixth* day of said term if the term shall so long continue—and if not then on or before the last day of said term—answer or plead to the petition in said cause," etc. It will be observed that defendants had notice of the

venue, the term and the day on which the term began, but instead of notifying them that they had only the statutory time of three days thereafter in which to answer or plead the notice doubled the time and gave them six. The record shows the judgment was rendered by default on the twelfth day of the term, thus giving defendants a leeway of six term days to appear beyond the time noticed. It is contended that such variance from the statute is fatal to the validity of the constructive service. We think not, and on these grounds: It will be observed that the statute on notice does not say that the defendants shall be required to appear on or before the third day of the term. The statute says they shall be required to appear "on a day to be named therein" and leaves the matter at that point. This notice complies with that statute literally. If, now, the notice had named a shorter time than does the section on the time of pleading, to-wit, 2042, supra, we would have had another question to deal with; or if a judgment had been rendered on the fourth day as section 2042 permitted, or if a judgment had been rendered at any time before the day mentioned by the notice, to-wit, the sixth day, we should have had a different question to deal with. In such event defendants could well complain that they were misled by the notice, or that the statute or some constitutional requirement of due process had been violated, but neither the one thing nor the other occurs here. No injury did or could arise to defendants by reason of the irregularity, and, on a collateral attack on the judgment, we can assign no vitality to the contention.

(4) It is contended that the petition states no cause of action. The specification is that it does not state that defendants are the owners of the land. That claim is inadvertently made by plaintiffs' counsel. The fact being *contra,* we see nothing wrong with the petition in that particular.

We have looked into other criticisms of the peti-
tion and find them not vital on the question of juris-
diction, as stating no cause of action.

(5) Complaint is made of the certified tax bill
attached to the petition, but it has been ruled over and
over again that on a question of jurisdiction the peti-
tion in tax suits is to be looked to and the order of
publication, not the tax bills, which latter are mere evi-
dentiary matter. If the tax bill were bad the vice in
it might be or might not be of substance on direct
proceeding by appeal or writ of error, but on collat-
eral attack it will be presumed that the court proceeded
by right and not by wrong and had satisfactory evi-
dence before it upon which to render judgment. [State
ex rel. v. Rau, 93 Mo. 126; Gibbs v. Southern, 116 Mo.
l. c. 218 et seq.; State ex rel. v. Bank, 144 Mo. l. c.
386; State ex rel. v. Hutchinson, 116 Mo. l. c. 402;
State ex rel. v. Wilson, 216 Mo. l. c. 303.] Conceding
to appellants that when the validity of a judgment is
questioned on jurisdictional grounds the whole record
is to be searched and read together (Cummings v.
Brown, 181 Mo. 711), yet when all is said, the vital
matter remains as jurisdiction, and the tax bill does
not touch that at all.

(7) It is argued that the judgment does not find
that the defendants in the tax proceeding were owners
of the land. If a literal view is to be taken of the stat-
ute relating to tax judgments then in force (R. S. 1889,
sec. 7683, *q. v.*) it does not put that finding on its list
of requirements. But taking a broader view and con-
ceding that on the good sense of the thing the judg-
ment should so find in order to be a proper conclusion
on the facts found or, as the statute defines a judg-
ment (R. S. 1909, sec. 2090), "the final determination
of the right of the parties in the action," yet the judg-
ment in hand narrates as follows: "And, all and sin-
gular the premises being seen and fully understood,
*the court finds the issues for the plaintiff.*" That

finding was in response to all the substantive charges of the petition, one of which was that defendants were the owners. We think that finding will do, hence there is no substance in the point.

(8) Having referred throughout to the parties defendant in the plural form, as was proper, at a place or two the judgment omitted the "s" off of the word "defendants," and that is charged as a fatal irregularity. If the maxim, *De minimis,* is worth anything at all in legal exposition the situation vehemently cries out for its use here. Evidently the omission of the letter was the mere penslip of a slovenly clerk. Sufficient appears from the context to show that to be so and we cannot well adjudicate substantial rights on such a mere pinprick of inadvertence. Appellants have cited us to no authority so holding, and if there were any we would not follow it. [Shinn v. Railroad, 248 Mo. l. c. 179 et seq.]

(9) We suppose from certain earmarks that the tax judgment is found, below, in a record book of tax judgments made up of printed forms. Be that so or not so, the form used here contemplated a series of years for which taxes might be delinquent and in suit in the same case, and appropriate blanks were provided for that purpose. In this tax suit having filled the blanks appropriate to the years 1887 and 1888, the others were left unerased. It is argued that this slovenly omission of the clerk invalidates the judgment. As the blanks, thus unfilled, appear to us on the record, they are referrable only to a limbo of jumbled nonsense. Peradventure they say nothing intelligible; they mean nothing intelligible, except that the clerk neglected to run a pen line through them. As the cause was treated as in equity, does not equity consider that done which should have been done? May not the discriminating eye of the chancellor see that line now? To hold that this breach in carefulness, this clerical error springing from lazy slovenliness, over-

turns the judgment would be to deal with the sober and practical affairs of justice from the viewpoint of frivolity. Miller v. Keaton, 236 Mo. 694, is in point. (*Q. v.*)

(10) But appellants criticise the judgment from another angle, namely, that it is a personal judgment for taxes on real estate. It is prolix and we will not cumber this opinion with it. Fairly read in all its provisions and by its four corners, we think the criticism must be disallowed as unsound. There is language in the judgment squinting toward the construction contended for, but there is other language *contra*; and when we consider that the petition was directed to a special judgment to be executed by a speial *fi. fa.* and that the statutes required those things, it would be overnice analysis of its terms to hold this judgment, rendered on constructive service (and for taxes on real estate at that), personal and not special. Appellants argue they are in danger of being pursued in their distant home by a suit on this judgment as one *in personam*. But, in the face of the whole body of the law, that is a vain fear, an idle timidity that can be allowed no efficacy in overturning the judgment. What say the maxims: Those are to be regarded as idle fears which do not affect a steady man. A frivolous fear is not a legal excuse.

(b) *Of defects in the deed.* The sheriff's name was Jonathan R. Barham. The deed so recites *passim*. But he signed his name thereto in this fashion: "J. R. Barham, sheriff." The acknowledgment in open court recites, *inter alia*, that "J. R. Barham is personally known to the judge to be the same person whose name is subscribed to the foregoing instrument of writing as having executed the same as sheriff, and is known to be the sheriff of the county of Stoddard aforesaid," etc.

Again, the deed shows that the land was described by abbreviations, and that the quarter section in question was sold in bulk.

It is argued those alleged defects are fatal to the deed, and it is also contended that the deed is fatally defective because of its narrations relating to the sheriff's advertisement of sale, which were, to-wit: ". . . . and having previously to the day of sale, hereinafter mentioned, given at least twenty days notice of the time and place of sale, and of the real estate to be sold, and where situate, as the law directs, by advertisement in the Vindicator, a newspaper published in my said county," etc.

We cannot very well follow the lead of appellants' suggestions in the foregoing insistences, supported as they are by ingenious argument, because:

(1) In the first place, the certificate of acknowledgment must be read with the deed. [City of Kansas v. Railroad, 77 Mo. l. c. 185.] Part of the function (and a main one) of a certificate of acknowledgment to a deed is to identify the person who signs and executes the deed. Here that person is identified by the judge as the sheriff who made the conveyance. Why should an appellate court have doubt about his identity when the sitting judge below, who knew the fact and solemnly vouches for it, had none? There is an elaborately reasoned case in point, Lincoln v. Thompson, 75 Mo. l. c. 629 et seq. Do not sheriffs' deeds, in the particular in hand, stand on the same foot with other conveyances of real estate? And, if we once announced the doctrine that a deed was bad in the body of which the full name of the grantor appeared but which was signed by the initials of his Christian name with his full surname, though properly acknowledged, would it not draw within its hazard all other conveyances? Clearly so. The point has been rarely made but (so far as we stand advised) when made has always been disallowed. We do the

same now.  The maxim is:  The presence of the body curves error in the name; the truth of the name curves error of description (*Praesentia corporis tollit errorem nominis, etc.*)

(2)  Abbreviations in land descriptions in customary use are part of the statutory scheme of a tax levy, assessment and collection by suit and such was the fact at the time of this tax suit.  [R. S. 1889, sec. 7707.]  That statute, as preserved and brought down to us in subsequent revisions as live law, has always been liberally construed to further its beneficent life and purpose.  The authorities are canvassed on that question in a case just handed down at this delivery. [Akins v. Adams, *ante*, p. 2.]  We can add nothing to what is there said.  The abbreviations here were the customary ones and followed the statute.

(3)  Whatever may be the rule on direct attack where injury is made to appear, the sale of the land in bulk will not avail appellants in a collateral attack on a tax judgment or deed.  [Morrison v. Turnbaugh, 192 Mo. l. c. 444 et seq.; Shelton v. Franklin, 224 Mo. 342; Culbertson v. Edwards, 243 Mo. 433.]

(4)  Referring to the narrations in the deed touching the advertisement, they are well enough.  Section 7684, Revised Statutes 1889 reads:

"The sheriff shall execute to  the purchasers of real estate under this chapter a deed for the property sold, which shall be acknowledged before the circuit court of the county or city, as in ordinary cases, and which shall convey a title in fee to such purchaser of the real estate therein named, and shall be prima-facie evidence of title, and that the matters and things therein stated are true."

It is argued that those narrations (*q. v.*) are mere conclusions of the sheriff and state no facts.  As to that we say:  The statute is silent on the *form* of a tax deed.  But as the whole scheme of collecting delinquent taxes was changed in 1877 and suits, as in ordi-

nary cases, were prescribed to be brought in courts of general jurisdiction, it is not a far-fetched conclusion to hold, as we do, that the lawmaker contemplated that the tax deed in its terms should follow the long-existing statute (*in pari materia*) relating to the narrations of sheriffs' deeds in general, to-wit, section 4954, Revised Statutes 1889, reading:

"The officer who shall sell any real estate, or lease of lands and tenements for more than three years, shall make to the purchaser a deed, to be paid for by the purchaser, reciting the names of the parties to the execution, the date when issued, the date of the judgment, order or decree, and other particulars, as recited in the execution; also a description of the property, the time, place and manner of the sale, which recital shall be received as evidence of the facts therein stated."

The tax deed in judgment complies with the last quoted statute. So, it is in the usual form of sheriff's deeds on execution sales on tax judgments. The case of Large v. Fisher, 49 Mo. 307, was under a former taxing dispensation and what is said in that case but illustrates the jealous solicitude with which courts then viewed the transfer of one man's land to another under the summary system then in vogue for tax sales. Appellants' reliance on that case we think ill advised. We shall not hold the narrations in the present deed relating to the advertisement a fatal defect or any defect at all. Prima-facie, and by virtue of the statute itself, those narrations are true. [R. S. 1889, sec. 7684.]

(4) Something is made of the fact that two of the parties defendant were dead at the time the tax suit was begun. But in the face of the fact that the common source (and then owner) of the title was alive and made a party, that feature becomes unimportant. The rule is that judgment defendants well served (barring exceptions not here) cannot complain even

on appeal (let lone on collateral attack) that the judgment is void as to other parties defendant not served —doubly so where they had no interest, as here. [Boyd v. Ellis, 107 Mo. l. c. 399, and cases cited.]   The modern doctrine is that a judgment (saving exceptions not material to this case) is no longer held to be in so far forth an entirety that if void as to one it is void as to all.   [State ex rel. v. Tate, 109 Mo. l. c. 269 et seq.; Stevenson v. Black, 168 Mo. l. c. 559; Keaton v. Jorndt, 220 Mo. l. c. 133 et seq.; Stotler v. Railroad, 200 Mo. l. c. 149 et seq.]

(5)  It is next argued, as we grasp it, that though the defects and irregularities specified are not fatal singly, yet taken together their cumulative effect so weighs down defendant's title in a sea of illegality as to drown it out.  Such theory is more specious than sound as a working rule in reaching justice.  It runs on the notion that in unity there is strength—witness, the fable of the father, sons and bundle of sticks. But there is no unity in the defects here, such as they are they do not dovetail together, one alleged defect does not aid the other to make out a want of jurisdiction and each defect (as in the saying about tubs) stands on its own bottom; or, to use counsel's word, is a "speck" to be inspected, respected, or suspected according to its own merits in meeting justiciable expectations.  Do not specks abound everywhere on the right hand and on the left?  In men, things, laws and titles?  All things terrene have specks, why not land titles?

In that behalf appellants put stress on a pronouncement by SCOTT, J., in Shields v. Ashley's Admr., 16 Mo. l. c. 474, thus:

"When there is a doubt about the regularity of the proceedings, which result in the sale of real estate, it represses the ardor of bidders at an auction, and causes a sacrifice of the property condemned to be sold.  Hence courts cannot be too cautious in requiring,

in all such proceedings, a strict compliance with the forms of the law.''

That excerpt must be read with the facts of the particular case Judge SCOTT was dealing with, *viz.*, an appeal on an order relating to a sale of real estate in a probate proceeding—as, in sound exegesis, must every judicial pronouncement. [State ex rel. v. St. Louis, 241 Mo. l. c. 238 et seq.] It was, as said, a direct proceeding. The court was, therefore, called upon to see to it that no sacrifice by depressed bidding should spring from irregularities in the proceedings heading to the sale. When the order appealed from was made the whole matter was *in fieri*, in process of making, and Judge SCOTT spoke his prophylactic words to that situation.

This case is not that case. This case seeks to overthrow a judgment and deed, a consummated transaction, by a collateral attack—a judgment, too, wherein the court acquired full jurisdiction, which fact, as already pointed out, made it a closed and sealed book in such form of challenge.

The point is ruled against appellants. With that ruling, all other contentions are disposed of (including some considered and not mentioned in this opinion) and the judgment stands for affirmance unless there is substance in the point we take next.

III. There is left one other assignment of error, *viz.*,: It is argued the judgment quieting title in favor of defendant in the instant case is erroneous for that the record shows the deeds, the mesne conveyances, from the purchasers of the tax sale were insufficient to convey the entire title to defendant. Specifications are immaterial because error, if any, in the judgment as between Mr. Clardy and outside parties is not a particle of concern to appellants, provided their ancestor lost title at the tax sale, as we have held he did. The statute ordains that error to be reversible must

materially affect the rights of parties appealing, not those of others. [R. S. 1909, sec. 2082; Kansas City v. Woerishoeffer, 249 Mo. l. c. 24; City of St. Louis v. Lanigan, 97 Mo. l. c. 180; Dixon v. Hunter, 204 Mo. l. c. 391 et seq.]

In the Dixon-Hunter case it was said:

"In the first place, defendant was alone concerned with that part of the decree affecting him. He was not concerned with settling the title as between the two groups of complaining heirs. If he lost it, the subsequent proceedings interested him no more. It is fundamental that an appellant cannot complain of error unless materially affecting the merits as against him."

So, appellants must show title in themselves before they can question a defendant's who holds under mesne conveyances from the common source. [Wheeler v. Land Co., 193 Mo. l. c. 291; Stewart v. Land Co., 200 Mo. l. c. 290.] Having lost their title at the tax sale, the judgment in defendant's favor as between him and Jones and Weber is unimportant on plaintiffs' appeal.

Accordingly the assignment is also disallowed to appellants.

We have not followed all the ramifications of elaborate arguments, but have pursued the matter far enough to dispose of material questions and to rule that the case was well decided. Let the judgment be affirmed. It is so ordered. All concur.